IN RE ANÍBAL PADILLA, Respondent.

No. 107.   Decided February 11, 1963.

224

*J. B. Fernández Badillo,* Solicitor General, *Rodolfo Cruz Contreras,* and *Genoveva R. Carrera,* Assistant Solicitors General, for The People. *Leopoldo Tormes García* for respondent.

PER CURIAM.

On January 9, 1961, the Solicitor General filed a complaint in this Court against Aníbal Padilla consisting of the following charges:

### FIRST CHARGE

"On July 23, 1959, respondent Aníbal Padilla observed immoral and improper conduct in expelling from his office his client, José Cuevas Vélez, and the latter's son, Dr. Juan Aníbal Cuevas, while holding in his hands a revolver and proferring at the same time insulting phrases at the said citizens who at that time were holding a professional conference with respondent."

The Special Master designated by this Court on February 16, 1961, to hear and receive the evidence in this case, certify and file the same with his findings of fact, in his report of August 7, 1961, concluded that the facts object of this charge

were proved. We have examined respondent's testimony denying these facts and the transcript of the evidence in this case and are satisfied that the Special Master correctly concluded that the facts object of this charge have been proved.

### SECOND CHARGE

"On July 23, 1959, respondent Aníbal Padilla violated the norm established by Canon 7 of the *Canons of Professional Ethics Governing the Conduct of Lawyers in Puerto Rico* in considering as proof of distrust the proposition made by his client José Cuevas Vélez to hire another attorney to represent him in the cases before the Superior Court of Puerto Rico, Ponce Part: *José Cuevas Vélez* v. *Ramón Ralat Sáez et al.,* Civil No. CS 57-820 and CS 57-1536, re: *Specific Performance of Contract.*"

In his report the Special Master states that the facts of this charge were also proved. We have been able to so determine from an examination of the transcript of the evidence.

### THIRD CHARGE

"On or about February 23, 1959, respondent Aníbal Padilla observed immoral and improper conduct in expelling from his office, proferring at the same time indecorous language, his colleague, attorney Práxedes Alvarez Leandri, who had gone there on professional business."

We agree with the Special Master that there is evidence of the facts on which this charge is based.

### FOURTH CHARGE

"Respondent Aníbal Padilla observed immoral and improper conduct in drawing up and filing in the Superior Court of Puerto Rico, Ponce Part, and in the District Court of Puerto Rico, Ponce Part, the following motions making false imputations to several magistrates in which he used language which was improper and offensive against those officers:

" *'Motion Seeking Disqualification Pursuant to Rule 63 of the Rules of Civil Procedure'* of February 20, 1959, filed in the case of *Digna María Colón* v. *Donato Zayas Pizarro,* Civil No. CS 58–543.

" 'Motion for Reconsideration in incident of Disqualification' of April 1, 1959, filed in the case of *Digna María Colón* v. *Donato Zayas Pizarro*, Civil No. CS 58–543.

" 'Motion Under the Authority of Act of March 11, 1915 to Continue to Litigate as Insolvent' of August 14, 1959, filed in the case of *José Cuevas Vélez* v. *Ramón Ralat et al.*, Civil No. CS 57–1536.

" 'Motion' of August 13, 1959, filed in the case of *María Buencristiano* v. *Israel Torres Torres*, Civil No. CS 57-1273.

" 'Motion Seeking an Order to Disqualify Judge Ramón A. Gadea Picó in this Case' of March 1, 1956, filed in the case of *José A. González* v. *Insular Labor Association*, Civil No. CS 55-926.

" 'Motion for a New Trial or to Set Aside Judgment Rendered*, of July 30, 1954, filed in the case of *José Sepúlveda Lugo* v. *René Vélez Faccio*, Civil No. R 111-41.

" 'Motion Praying the Court to Render Summary Judgment in Accordance with the Stipulation of the Parties' of May 18, 1953, filed in the case of *Juan Oscar Vázquez* v. *Luz Aurora Schmidt*, Civil No. TS 52-208.

" 'Motion Praying the Court to Render Summary Judgment' of May 18, 1953, filed in the case of *Luis G. Hernández* v. *Antonia Vélez Morales*, Civil No. CD 52-826.

"Document of May 18, 1953, sent to the Administrative Judge of the Superior Court of Puerto Rico, Ponce Part, seeking the disqualification of Judge Ramón A. Gadea Picó.

" 'Motion of Opposition and Submission on the Merits' of September 18, 1956, filed in the case of *María Buencristiano* v. *Francisco Luis Franceschi*, Civil No. CS 56-192.

" 'Motion' of May 21, 1956, filed in the case of *José A. González* v. *Insular Labor Association*, Civil No. CS 55-926.

" 'Motion Submitting the Marriage Certificates Object of this Motion, Praying for Peremptory Judgment' of November 1, 1956, filed in the case of *Juan V. Martínez* v. *Mercedes Alvarado*, Civil No. CS 56-1259.

" 'Explanatory Motion' of June 24, 1957, filed in the case of *Laureano Postigo* v. *Antonio J. Zayas*, Civil No. CD 57-304."

## FIFTH CHARGE

"Respondent Aníbal Padilla has observed immoral and improper conduct in sending the letters listed below, addressed to

top officers of the Commonwealth of Puerto Rico, making false imputations, using language unbecoming an attorney, to several magistrates of the Superior Court of Puerto Rico.

"Letter of April 7, 1954, addressed to the Office of Court Administration of Puerto Rico, relating to a complaint against Ramón A. Gadea Picó.

"Letter of July 3, 1954, to the Governor of Puerto Rico.

"Letter to the Chief Justice of the Supreme Court of Puerto Rico, received August 17, 1953.

"Letter of June 30, 1954, to Judge Cecil A. Snyder.

"Letter to Lucas F. Serbiá of November 28, 1958, enclosing a *'Motion under Rules 49.1 and 49.2 of the Rules of Civil Procedure'* requesting him to file the same in the case of *José Cuevas Vélez* v. *Ramón Ralat Sáez et al.* in the Superior Court of Puerto Rico, Ponce Part.

"Letter of February 19, 1959, to the Secretary of Justice.

"Letter of December 10, 1958, to the Administrative Director of the Courts.

"Letter of July 28, 1959, to the Secretary of Justice."

In his report the Special Master confined himself to indicating that respondent had filed and presented in the Superior Court and in the District Court, Ponce Parts, the documents referred to in the Fourth Charge and that he drew up and sent the letters mentioned in the Fifth Charge. Those motions and letters, summed up as briefly as possible, are the following:

*Exhibit 1*. Motion of February 20, 1959, seeking the disqualification of the judge pursuant to Rule 63 of the Rules of Civil Procedure, filed in the case of *Digna María Colón* v. *Donato Zayas Pizarro*, Civil No. CS 58–543.

Briefly, it is alleged in this motion that if the judge had considered the questions of law and of fact submitted by respondent, the orders, resolutions and rulings entered in the case would have been entirely different; that the judge has threatened the plaintiff with contempt, and further, that he denies to plaintiff the right to live a peaceful life, free from defendant's interference; that an order of the court has been

228

entered in such a way as to permit the defendant to do as he pleases; that the judge has disregarded the questions of law and of fact raised by plaintiff, and inevitably "HAS SHOWN MARKED PREJUDICE AND PARTIALITY AGAINST US." Respondent has pressed these allegations, but has not introduced evidence in support thereof.

*Exhibit 2.* Motion for Reconsideration in Incident of Disqualification.

On March 26, 1959, the Administrative Judge of the Superior Court, Ponce Part, after holding a hearing denied the motion for disqualification, which is Exhibit 1 above, on the ground that the imputation of prejudice and partiality is manifestly unfounded, there not having been found one single detail in the actions of the magistrate concerned to support such imputations; nor was any evidence or indicia of evidence introduced in principle to show that between the said magistrate and the plaintiff or her attorney there occurred any incident indicative of passion, prejudice, or partiality in the trier's actions. An order was issued to the clerk of the court to transmit copy of that motion to this Supreme Court to take judicial notice of the questions raised therein, and, in the exercise of its investigating and disciplinary power, to be in a position to adopt such measures as it may deem proper. In opposition to this order respondent filed a motion for reconsideration, which is Exhibit 2 of Charge Number 4. In this motion respondent made the following comment: "We have always believed that both for the Judiciary and for us IT IS BETTER TO AVOID THAN TO REMEDY. Yet, Your Honor did not follow that principle, and by his attitude toward the undersigned attorney we were led to believe that we had to remedy, and no longer sought to avoid." In another part of the motion respondent alleges that "To allege those facts, YOUR HONOR CALLS IT 'NOT SUPPORTED BY THE

EVIDENCE' and applies the innuendo that they are false. As a practicing lawyer, I shall forget that innuendo and FORGIVE AS CHRIST DID." The motion ends with allegation No. 12 in which, upon referring to the provision of the aforesaid order to the effect that the same be referred to this Supreme Court, respondent makes a series of imputations to the Administrative Judge who issued the order to the effect that he suspends hearings by telephone, that there is no reason why the jurors should remain in the courtroom for cases which will commence at 5 p.m., thereby incurring expenses to The People and annoyance to the jurors; that there is no reason for compelling stenographers to work day and night; that there is no reason for continuing a case because the services of a senator are going to be used; that there is uneasiness among attorneys because they are summoned to appear at 9:00 a.m. for some incident while a trial by jury is being held; that the Administrative Judge has not informed the Court Administration of the treatment accorded to employees who are disgusted with the established military discipline; and lastly, that on many occasions the Administrative Judge knowing that it is humanly impossible, has set three litigious cases and other ex parte cases before the same judge, as a result of which the attorneys have been compelled to spend the whole day in court without their cases being called, and if they are called, they are continued.

*Exhibit 3.* Motion of August 14, 1959, under the authority of Act of March 11, 1915, to continue to litigate as an indigent person.

This is a motion addressed to the Administrative Judge of the Superior Court, Ponce Part, in a case which is under the consideration of another judge and in which it is alleged that the latter had denied a petition on insolvency because the defendant had said that he would not insist on such petition because he had agreed with the stenographer to pay him his fees. In the motion in question it is alleged that

230

"JUDGE RAMÓN A. GADEA PICÓ IS QUITE MISTAKEN, and that mistake is due to the force of habit of the judge of arguing with the attorneys and departing from the real controversy or matter involved." And he adds, "the undersigned attorney deeply regrets that because of his determination made many years ago not to practice before JUDGE RAMÓN A. GADEA PICÓ, upon resuming his practice he will receive orders which are in nowise supported by the evidence and the facts." Respondent further alleges that his motion for leave to continue to litigate as an indigent person was sworn to before the clerk of the court, wherefore the motion comes squarely within the procedure provided by the Act of March 11, 1915, and that "That Act (of March, 11, 1915) was amended apparently by the order of Judge Ramón A. Gadea Picó, since he did not consider the oath nor THE EVIDENCE, as shown by the stenographic record of the hearing."

*Exhibit 4.* Motion seeking an order directed to Judge Ramón A. Gadea Picó to disqualify himself in the case of *González* v. *Insular Labor Association.*

Respondent alleges in this motion that he agreed to attend the pretrial conference before Judge Gadea Picó because of plaintiff's insistence and with the absolute certainty that the judge's attitude had changed, but "much to his regret ... he realized ... that the judge's conduct had not changed at all, and, on the contrary, that he observed a marked gesture of displeasure of the judge which made the undersigned attorney fear for his personal safety, since it was permitted by the judge that the undersigned attorney be humiliated and treated disrespectfully in his presence." That in the presence of the judge the deputy clerk of the court was treated disrespectfully and called "A LIAR" with his acquiescence; that on many occasions, in order to avoid embarrassing situations, respondent had urged the said judge to avoid continuance of this case and that he had so promised him.

*Exhibit 5.* Motion in the case of *Vázquez* v. *Schmidt* to render judgment in accordance with the stipulation of the parties.

In this motion respondent complains that the judgment rendered was contrary to the stipulation and that he had filed a motion for judgment in accordance with the stipulation and that this was not done. Lastly, that respondent has good reasons to believe that the court's attitude is due to the fact that Judge Gadea Picó who rendered the said judgment dislikes the respondent.

*Exhibit 6.* In the case of *Hernández* v. *Vélez Morales*, motion praying the court to render summary judgment.

It is alleged in this motion that the action was filed on June 20, 1952 and that the case was submitted in January 1953, and that despite the new rules providing that the cases shall be decided promptly and that there was no justification for a four months' delay, the court has not decided the same, further alleging that: "it is VERY QUEER that the cases of the attorney for plaintiff are always delayed when they are submitted to Judge Ramón A. Gadea Picó for consideration."

*Exhibit 7.* This exhibit is a request to the Administrative Judge of the Superior Court, Ponce Part, that the cases in which respondent appears be set for hearing or argument before any judge other than Judge Gadea Picó, on the ground that respondent has had disagreements with that judge because he has called his attention to the fact that many of those cases have been misplaced and in others that he has been compelled to resort to the Supreme Court, by way of mandamus, in order that the same be decided, as a result of which "the undersigned attorney has been so upset that he hardly has the tranquility necessary to make a good defense of the interests which his clients have entrusted to him." And, lastly, that respondent "has lost all hope that the cases object of these motions be disposed of."

*Exhibit 8.* This a motion in the case of *González* v. *Insular Labor Association, etc.,* in which respondent complains that a compromise was made on March 26, 1956, and that on April 18 of that year respondent moved for judment on the basis of such compromise without judgment having been rendered by the date of that motion, May 21 of that year, and further, "WHEREFORE, FOR THE LOVE OF GOD, plaintiff herein prays the court to render the judgment in question."

*Exhibit 9.* Motion submitting marriage certificate and praying for peremptory judgment in the case of *Martínez* v. *Alvarado.*

In this motion respondent complains of the delays and errors encountered in obtaining marriage certificates from the Registry of Vital Statistics, and adds: "That on the 11th of last October we moved to set aside the order of Judge Velázquez Rivera and the court decided 'MOTION DENIED,' thereby showing once more HOW DIFFICULT IT IS FOR ATTORNEYS TO WORK even in simple cases such as the present case."

*Exhibit 10.* This is a writing entitled "ANÍBAL PADILLA, Complainant, *v.* RAMÓN A. GADEA PICÓ, Respondent."

In this writing the complainant, respondent herein, alleges that a motion for support pendente lite in the case has not been decided despite the fact it has been set for hearing and that the moving party appeared with his evidence, Mr. Padilla having then raised the question whether or not it was proper to continue the hearing respecting which the judge reserved decision, which he did later in a manner unsatisfactory to complainant. Respondent further alleges in this writing:

"11. That since 1948 complainant herein has observed, when practicing before respondent, that respondent has interposed great and persistent obstacles to the complainant in order that his practice, of the complainant herein, may not have the free-

dom and assurance of seeking proper justice for the persons represented by complainant herein.

"12. That respondent herein has always been moved by passion, prejudice, and partiality against complainant to such a point that many of his clients have been compelled to procure the services and representation of other lawyers; and those who have been loyal to complainant have had to wait many years without their cases being decided, as a result of which complainant herein has been compelled to file several petitions for mandamus in order that respondent may decide questions and cases submitted to him.

"13. That about three years ago complainant herein wrote a letter to respondent urging him not to intervene in the cases in which complainant herein appeared as attorney, which request has been useless and, on the contrary, respondent's animosity against complainant has increased.

"14. The complainant herein has information and knowledge, which he believes to be true, that respondent has a group of lawyers who are his favorites—the respondent's—who are favored in seeking speedy and economic justice for the clients of the group so favored and in detriment to the clients of attorneys and attorneys who are not favored by respondent.

"16. That respondent's attitude is not only toward complainant herein but also toward other attorneys, thereby causing animosity and displeasure among the lawyers of Ponce, in detriment to the administration of justice entrusted to respondent.

"17. That for over four years complainant herein has been compelled to take expensive appeals, petitions for review, and on many occasions to abandon all defense as a result of respondent's biased, prejudiced, and partial attitude toward complainant herein.

"18. That such passion, prejudice, and partiality against complainant herein has increased continuously to the point that complainant herein, when he appears before the court in his mission of attorney, fears for the interests of his clients and even for his personal and professional freedom—complainant's.

"19. That all of the foregoing is evidence of respondent's incompetency to hold the office of judge and arbitrator.

"20. That the only purpose of this complaint is to seek respondent's disqualification in all cases in which complainant herein must appear before the Superior Court of Puerto Rico, Ponce Part."

234

*Exhibit 11.* This is a letter addressed by respondent to the Governor of Puerto Rico complaining of the delays in the prosecution of cases in the Superior Court, Ponce Part, and informing that he is convinced that Judge Gadea Picó has always been dominated by his animosity toward respondent, "who has had the courage to call Judge Gadea Picó's attention to his incompetency as a judge as long as he is moved by prejudice, passion, and influenced by alien interests and reasons." And adding that "A people can not be governed when it loses faith in the courts. As a result of Judge Gadea Picó's behavior the people look with distrust to the administration of justice when it is in the hands of this judge." The letter ends by urging the Governor to order an investigation of these facts and, if found proved, to remove Judge Gadea Picó from office. The Office of the Governor referred this matter to the Office of Court Administration the day after the complaint was received.

*Exhibit 12.* This is a letter addressed by respondent to "The Hon. Chief Justice, Administrative Director of Courts," in which he complains of the delays of the Ponce Part of the Superior Court, of which he complained to the Court Administration and that no action has been taken. He also complained to the Secretary of Justice of a judgment rendered by Judge Ruiz Somohano which was not supported by the facts and questions of law, and that the said complaint was referred to the Chief Justice without comments, and to this day respondent has heard nothing about the complaint. In this letter respondent urges "that a judge be designated, no matter who, but not from among those who have already intervened in both cases, in order that, on the basis of the evidence in the record, the only judgment which ought to be rendered be rendered, namely: JUDGMENT FOR PLAINTIFF JOSÉ CUEVAS VÉLEZ."

*Exhibit 13.* This is a letter of November 28, 1958 addressed to "Administrative Director, Court Administration, Supreme Court of Puerto Rico," enclosing a motion in the case of *Cuevas Vélez* v. *Ralat,* filed in the Superior Court, Ponce Part, because Judge Ruiz Somohano is absent from Ponce, requesting that it be transmitted to that judge and to keep copy thereof in that office in order that it be available in further proceedings.

"You will see from the contents of that motion that the situation is alarming for my client and for myself as well, since pursuant to the Rules a remedy should have been made available within THREE DAYS after written notice, in the event of opposition by the defendants. You will also see that the court, by reason of the technicalities of defendants, permitted itself to be deviated from the proper procedure established in the Rules to the point that a decision by a judge of the same court was set aside by another."

The motion rather seems a motion for reconsideration of judgment, alleging that the case had already been decided twice by another judge. Regarding one of the parts of the judgment, respondent alleges in this motion that "This is the decision of the court through Héctor Ruiz Somohano and, honestly, we can hardly believe that cases in the Commonwealth courts, in American courts, are decided in such fashion, as in the instant case."

In par. (g) of the motion it is alleged that "In the judgment in question Héctor Ruiz Somohano makes a statement of FACTS PROVED, CONCLUSIONS OF LAW, AND JUDGMENT. Any attorney, other than the attorneys for the defendants for whom such judgment was rendered, who are acquainted with the provisions of the Rules of Civil Procedure, especially Rule 34 (b), now Rule 31.2 of the Rules of Civil Procedure, will admit that that judgment does not comply at all with the provisions of those Rules."

Further on respondent alleges in this motion, "For two years we have prayed the Ponce Part of the Superior Court

for THAT REMEDY provided by our Supreme Court in the case of *Rodríguez* v. *Star Fruit, supra.* And for TWO YEARS the Ponce Part of the Superior Court has not only been heedless, but has also gone farther, IT HAS DENIED THE REMEDY TO WHICH PLAINTIFF IS ENTITLED. Time and again the court has notably searched for technicalities paying heed only to the defendant in order to deny that remedy ... 1. That the so-called judgment rendered by Héctor Ruiz Somohano is not only a departure from the procedures provided for an action of survey, but is also the marked tendency of the court not to grant the speedy, economic, and just remedy to which plaintiff is entitled. 2. That in that judgment there is error of procedure, inadvertence of the issue, and that it is a SURPRISE in an action of survey, the judge having been grossly negligent in disregarding the rulings or orders of Judge Miguel A. Velázquez Rivera."

*Exhibit 14.* This is a letter sent by registered mail by respondent to the Secretary of Justice, in which he complains again of the judgment rendered by Judge Ruiz Somohano to which reference is made in the preceding exhibit.

"At last, before leaving Ponce, Judge Héctor Ruiz Somohano, disregarding the entire procedure outlined by the Rules and the Code of Civil Procedure and setting aside orders of other judges, rendered a judgment which clearly shows not only the magistrate's incompetency but also a marked prejudice and biased conduct in deciding the question submitted to him as judge.

"We wanted to exhaust, and did exhaust, all remedies available to us within the proceeding in order that the judge in question, who had absented himself from Ponce, would do honor to the oath which he took by imparting justice to the parties as it was his duty to do. Hence, our motion was addressed to him through the Court Administration.

"Unfortunately in Puerto Rico, despite the fact that the Court Administration knows and has proof of the manner in which justice is administered in Ponce, a judge, by reason of

being a judge, even though he acts WICKEDLY, may continue to commit INJUSTICES with impunity under color of exercising judicial discretion.

"  .        .        .        .        .        .        .

"Judge Héctor Ruiz Somohano, knowing that he should not do so, invaded a prohibited field by setting aside orders entered by other judges and creating an IMPROPER procedure in order to decide in his own fashion and to please himself.

"We requested the Court Administration to make an investigation of all such actions, but to this day it has not replied to our request nor stated the reasons for denying or ordering such investigation. And I know the reason: The Court Administration in Ponce is a disgrace. Politicians are pleased with appointments, but no part of the Court of First Instance in Ponce does its duty."

*Exhibit 15.* Exhibit 15 is a letter addressed to the Administrative Director of the Courts. Reference is therein made to two motions in the cases of *Cuevas Vélez* v. *Ramón Ralat,* and *Pizá, Inc.* v. *Velázquez,* which respondent sent to Mr. Serbiá for transmittal to Judges Ruiz Somohano and Martínez Ramírez and which Mr. Serbiá returned to him. In that letter he says: "And it is obvious that in these two cases, in the first one mentioned, Héctor Ruiz Somohano disregarded the Rules of Procedure, and also there is an evident purpose not to discover the truth. In the second, IT IS NOT POSSIBLE that in Puerto Rico, under the shelter of a court, a party may appropriate to itself money on deposit in the amount of a pledge and that the court fails to order that the pledge be delivered.

"Now it is I who invite you to abide by § 7, Art. V of the Constitution of the Commonwealth under which the good administration of justice and of the courts is placed in your hands. In view of such administrative chaos where the judges are moved around as if they were men in a chess board and where they are only required to decide cases without the requirement of substantial justice, there is no question that when the whereabouts

of a judge is not known and only your Office has knowledge of it, every citizen has the right to do what I did, to send you those two motions."

*Exhibit 16.* This is a letter addressed by respondent to the Secretary of Justice. In that letter respondent informs the following:

"In view of the impossibility to obtain justice for my client Cuevas Vélez, it is natural that he should write to me the letter the original of which is herewith enclosed" (asking me to return to him the papers of his case owing to the incident of the revolver), "in order that Your Honor may have a clear picture of the manner in which justice is being administered in Puerto Rico and how that situation is affecting those of us who have no pull strings in the Government."

The letter ends by asking the Secretary of Justice to urge the Chief Justice of the Supreme Court to send a special district attorney to determine the rights of respondent's client.

*Exhibit 17.* It consists in the transcript of an incident in the case of *Cuevas* v. *Ralat,* in which respondent objected to the examination of the witness, and when the judge informed him that the purpose was to clarify in order to avoid unnecessary questions, respondent answered that the judge was inducing the witness to commit perjury. The judge remarked that he was committing contempt and the incident ended with respondent's statement that he would proceed with his case and that the judge could adopt measures, "that there is a Supreme Court to judge both of us."

*Exhibits 18, 19, 20 and 21.* Exhibits (18) and (19) consist of two receipts for attorney's fees. (20) Letter from respondent to his client. (21) Letter to the Chief Justice of the Supreme Court requesting an appointment to explain the situation of a client of respondent in connection with the conduct of the Ponce Part of the Superior Court. This request for an appointment is typed on the reverse of a sample of letter on another matter.

*Exhibit 22.* This is a motion in the case of *Cuevas* v. *Ralat* in which the plaintiff and his son inform the Superior Court, Ponce Part, that they have filed a complaint against respondent in the Department of Justice and urge the court to decide once and for all that respondent no longer represents the appearing parties.

*Exhibit 23.* This is a motion to strike filed in the case of *Pastor Orta* v. *Cardona*, requesting the elimination in a complaint filed by respondent, as being immaterial and irrelevant and defamatory and scandalous, the following allegation:

"That the said order and writ of eviction was delivered by defendant herein, Pedro Antonio Cardona, to deputy marshal Munet, knowing that such document had to be delivered to marshal Godoy and that the orders issued by Judge Dávila Ortiz are never delivered directly to Mr. Godoy because these two officers are not on speaking terms, AN ABNORMALITY of which defendant herein took advantage in order that deputy marshal Munet would remove to Adjuntas for the purpose of ejecting from the house the sister above-mentioned." (Capitals by plaintiff.)

*Exhibit 24.* This is the order of the court in connection with the motion mentioned in Exhibit 23. This order directs that the allegation mentioned in the motion referred to, in connection with the cause of action, be stricken out.

*Exhibit 25.* This is the order of the Superior Court, Ponce Part, denying respondent's motion referred to in Exhibit 3 above on the ground that it does not conform to the procedure established by law.

*Exhibit 26.* Motion in the case of *Buencristiano* v. *Torres.* It is alleged in this motion that the case having been set one time for 9:00 a.m., defendant appeared through respondent, but the attorney for the other party did not appear, and that Judge Gadea Picó called the latter by telephone, which according to the allegation in the motion it was

not proper to do. And he adds, "the judge seems to forget this because, as we were able to realize, he has great partisan political concern for the FERNÓS BILL AND THE COMMONWEALTH, a concern which he carries with him day and night and even until the moment he appears in court, IF HE APPEARS AT ALL, since the hearing held on July 11 at 3:00 p.m., after calling Lic. Inés Acevedo de Campos by telephone, WHICH IN NOWISE MAY BE CALLED A HEARING but an opportunity to hear Inés Acevedo, was held in Judge Ramón A. Gadea Picó's chambers or offices."

In this motion respondent prays that a new hearing be held on all pending questions "WHICH WERE NOT DECIDED by Ramón A. Gadea Picó."

*Exhibit 27.* Motion for a new trial or to set aside the judgment rendered in the case of *Sepúlveda* v. *Vélez.* It is alleged in this motion that "the judgment rendered in this case by Judge Ramón A. Gadea Picó has been the product of anger, animosity, and enmity of that judge toward the attorney for plaintiff herein." That such anger, animosity, and enmity of the judge toward plaintiff's counsel is due to the motions for disqualification of the judge, filed by plaintiff's attorney which were denied; motion urging the judge to pass upon the motions for dismissal, which he did not do; several petitions for mandamus, appeals, and a complaint, and in other cases filed by Padilla against Judge Gadea Picó; and numerous personal incidents between the attorney and the judge. It is alleged in this motion that the judge's attitude toward attorney Padilla has made it impossible to hold an impartial trial in this case, that numerous irregularities have been committed in the proceedings consisting in setting aside a default entered, and, consequently, failing to render judgment against defendants "who, according to the documentary evidence AND THE DEFAULT ITSELF, were the only ones liable for all expenses, attorney's fees, and costs of litigation," and "Because from the face of the complaint and

the documentary evidence admitted it appeared that defendant had taken possession of part of the property purchased by plaintiff, all of which shows that this cause of action could not have prescribed."

*Exhibit 28.* This exhibit consists in the order of Judge Gadea Picó in the case of *Sepúlveda* v. *Mercado*, in connection with the motion referred to in the preceding exhibit. This order denied the motion in question on the ground that it was untimely filed, the judge having stated that if it was considered that the judgment was based on an erroneous weighing of the evidence for abuse of discretion in dismissing, the proper procedure would be to seek review before the Supreme Court. In the last paragraph of this order the judge says: ". . . solemnly and emphatically that the undersigned judge has never had any personal incident with the attorney for plaintiff, Aníbal Padilla, and that this judge has no prejudice and much less anger, animosity, or enmity toward the said attorney, having co-operated most cordially with the said attorney as well as with those who have practiced in this court and in the judge's division in all matters handled by him as judge during the lapse of almost 13 years."

*Exhibit 29.* This is a Motion of Opposition and Submission on the Merits in the case of *Buencristiano* v. *Franceschi*. It is alleged in this motion that he objects to any procedure in this case other than the rendering of judgment, since the case has been submitted. He also alleges that the hearing of this case has been continued on several occasions and that it was finally set for September 7, 1956. The court advises the parties ". . . 'the hearing will be held on that day independently of whether or not José N. Dapena appears.'" That two days prior thereto Dapena again moved for continuance of this case and that it was called on the 7th day, but Dapena did not appear and the same was submitted. The following are allegations 8 and 10 of the motion above-mentioned:

"8. That the learned attorney for defendant, Mayor José N. Dapena Laguna, now says 'That at the commencement of the introduction of defendant's evidence the undersigned attorney rested' *unmistakenly on the comprehensiveness and comradeship of Aníbal Padilla* (italics ours), and in view of these UNFAIR remarks the undersigned attorney for plaintiff says to José N. Dapena Laguna that he knows this attorney quite well and that for the reason that he has never received any favors nor sympathy when practicing before the courts, many colleagues, especially José N. Dapena Laguna, have WRONGFULLY miscomprehended him in a NEGATIVE way.

"10. That defendant's motion for reconsideration of the order of this court is without merit, since 'AS A MATTER OF PROFESSIONAL ETHICS' it seems that 'THE SITUATION IS ANOMALOUS,' particularly since José N. Dapena Laguna IS STILL THE ATTORNEY FOR DEFENDANT and shall continue to be the mayor of Ponce until his successor qualifies."

*Exhibit 30.* This is a letter of June 24, 1957, addressed by respondent to the Administrative Director in connection with Judge Mangual of the Ponce Part of the District Court. Enclosed with this letter is an explanatory motion in the case of *Portigo* v. *Zayas* requesting him to intervene with that judge in order to prevent lawyers from considering the courts as places for amending the laws, following the procedures to suit their fancy and will and the judgments are the product of the will of one of the parties.

It is alleged in this motion that a privileged demurrer was filed in an action of unlawful detainer, and that the purpose sought is to make the judge fail in his work because it was defendant's duty to allege his defenses at the first hearing and that although he is falsely informed that copy of the privileged demurrer was sent to respondent, the latter has failed to receive the same. Lastly, it is alleged that when the conduct of one of the parties or his attorney delays the special proceedings in an unlawful detainer case, "... which by its nature is an extraordinary action, the court, even if the judge is young, SHOULD COMMAND RESPECT, and the party

or his attorney, even if he is young also, as in the instant case, THE ATTORNEY SHOULD BE DISCIPLINED AND THE PARTY PENALIZED TO PAY A SUM OF MONEY for the payment of attorney's fees of the other party."

*Exhibit 31.* This is the personal record of Aníbal Padilla which is on file in this Supreme Court.

*Exhibit 32.* This exhibit is a copy of the judgment in the case of *Cuevas* v. *Ralat* rendered by Judge Ruiz Somohano. This case involves a certain property having an area of over 122 meters the purchase of which by Cuevas Vélez was duly recorded, and after making a survey it showed an area of over 61 cuerdas. It is an action for survey in which the surveyor was unable to measure a boundary because he did not obtain the consent of the adjoining owners who allegedly are beneficiaries under age and one of them is of full age.

It was concluded that the action for survey should be dismissed as to codefendants Ramón Ralat and Ramona Pérez because these persons are not adjacent owners or possessors of land adjacent or contiguous to plaintiff's property. The court concluded that the issue should prosper because the fiduciary, owner of the title and possessor of the lands on the northern boundary who has not been joined as a party defendant in this case, was not joined in the action.

*Exhibit 34.* This is a letter addressed by respondent to the Governor on August 6, 1956, enclosing copy of a motion in the unlawful detainer case of *Portigo* v. *Zayas* in the District Court of Puerto Rico, Ponce Part. It is informed in that letter that:

"The judge who issued the order sought to be reconsidered is a young man who, for the reason that he is from Sabana Grande, is already presiding a part of the court in this city, and this is not a coincidence since all those who have ascended in the judiciary in an unusual manner have come from the district of Mayagüez. The marshal mentioned in the motion, of whom

on another occasion the Solicitor General said that he had resorted to practices which detract from the administration of justice, is also from San Germán.

"Don Luis, I know that under our democratic system the executive can not intervene in judicial matters. However, in so informing you I am moved solely by a desire that democracy, in your government, be a reality."

It is alleged in the motion that the hearing of this case was first set for August 3, 1956, and that defendant did not appear because plaintiff was asked "to present his evidence. AND THERE IS NOTHING IN THE CODE TO PERMIT THIS ACTION OF THE COURT"; that when plaintiff "was presenting his evidence the marshal left the court in order to fetch Héctor Lugo Bougal who was to appear for defendant, AND SUCH CONDUCT OF THE MARSHAL should not be tolerated by the court since it detracts from the administration of justice." That the court refused to render judgment after "the evidence was presented" on the ground that copy of the complaint had not been sent to the Rent Office, it having been stated in the complaint that copy thereof was sent to that office. That Héctor Lugo Bougal appeared at the close of the hearing and at his request the court reopened the hearing; that the court abused its discretion in reopening the case, "SINCE THE DEFENDANT HAD NOT APPEARED NOR HAS APPEARED TO THIS DAY, IN WRITING, IN ANSWER TO THE COMPLAINT, AND, THEREFORE, THE CORRESPONDING SCHEDULED INTERNAL REVENUE STAMPS HAVE NOT BEEN CANCELLED *to this Day.*" That what the court did, without any right, was to consolidate the two appearances, and that, therefore, "JUDGMENT SHOULD BE RENDERED WITHOUT FURTHER HEARING OR SUMMONING THE DEFENDANT."

*Exhibit 35.* This is a dominion title proceeding in the case of *Costas Ferrer* v. *Costas Purcell* in which respondent filed a motion praying that a motion called Third-Party Complaint be denied. It is alleged in this motion that the Third-Party Complaint ought to be dismissed on the ground of in-

tervener's negligence, since this action was brought in 1955 and in April 1960 the so-called intervener moved for leave to intervene. That there is a case before the Superior Court, Condemnation Part, in which the intervener "...*misled* the court and *succeeded in withdrawing* TORTUOUSLY from that court four fifths of a certain sum of money; and the Condemnation Part of the Superior Court, convinced of such conduct, ORDERED THE PARTY APPEARING HEREIN *to return* the money withdrawn ... wherefore the so-called Third-Party Complaint filed in this Ponce Part leads the party appearing herein to believe ... that the purpose is to obviate the order of return behind the back of and outside the Condemnation Part."

## Sixth Charge

■ "On July 22, 1959, respondent Aníbal Padiila, at the time when a deposition was being taken from Miguel Salicetti before Judge Ramón A. Gadea Picó, accused that magistrate, falsely and without any basis or reason therefor, of inducing deponent Miguel Salicetti to commit perjury."

The Special Master verified the facts object of this charge. See, to this effect, Exhibit 17 consisting in the transcript of the record of the incident object of this charge related above.

In his answer as well as in Exhibit 33, which is a sworn statement of respondent, the latter alleged with respect to the first charge that Dr. Cuevas insisted that he deliver the record to him in order to consult another lawyer, to which respondent answered that he would not because that was inconceivable and antiethical and humiliated him, but that he did not object to his joining another lawyer in the case; that he was compelled to ask Cuevas and his son to leave because the latter got angry. He denied using a revolver.

Regarding the third charge respecting the incident with Álvarez Leandri, respondent alleges that he asked him to leave the office because he insisted on discussing a case behind the back of respondent's client. As to the different motions

and letters object of the fourth and fifth charges, respondent alleged that they had been sent in good faith to all the competent courts and agencies called upon to pass upon and decide them accordingly; that they were not made for the purpose of divulging or making them public; that they were made in good faith, and that the statements made therein reflected the truth respecting the facts therein alleged; that respondent has a constitutional right to express his grievances before the courts and other bodies in order to obtain real justice for his clients; that he honestly told the truth in those motions and letters, all his allegations being pertinent and important, in a desire to obtain proper remedy.

Regarding the sixth charge, respondent alleged that in the course of a hearing in which a witness was giving a deposition, respondent, in good faith, objected to a question which the court addressed to the witness, arguing in favor of his objection and on the consequences of such question. However, respondent did not offer any evidence in support of the imputations made by him in such motions, writings, and incidents.

The Secretary of Justice as well as the attorney for respondent filed elaborate briefs in support of their respective contentions.

By reason and by the nature of his profession the attorney is bound to conduct himself at all times in such a way as not to impair nor mar the confidence necessarily reposed in him by performing acts so alien to the practice of his profession, such as displaying a firearm for the purpose of using it in the course of a discussion of a matter with his client. The attorney is an officer of the General Court of Justice of Puerto Rico and as such he should set the example of good citizenship, of culture and tact, since he is bound to consider, defend and enforce the rights and obligations of other persons. The practice of his profession is an essential part of the basic function of imparting justice in

every civilized community of a democratic order and under the authority of the law. Therefore, the act of taking a revolver, pointing it at his clients and, under such threat, expel them from his office, as stated in the first charge, which was proved, constitutes improper, reprehensible and immoral conduct which is aggravated in utmost degree when it is exercised by a lawyer in relation to his clients to whom he owes respect and understanding. The conduct object of the next two charges also constitutes reprehensible and improper conduct on the part of respondent.

██ The different motions and letters object of the fourth charge constitute gross disrespect to several magistrates of the Superior Court and of the District Court of Puerto Rico, particularly those containing untrue imputations and in which improper and offensive language is employed. In cases such as this it is possible that effective measures timely adopted by the magistrates taking cognizance of the cases in the first instance may prevent the creation of the climate which gave rise to, or which may correct in time an improper line of conduct on the part of an attorney such as that appearing from the different writings and motions in question.

█ The correspondence object of the fifth charge reveals improper conduct of respondent, violative of the principles of professional ethics, in seeking justice for his clients by means of actions performed outside the judicial ambit which redound to the exercise of pressure on the judiciary alien to the merits of the causes which he defends.

The facts proved are sufficient to decree respondent's suspension from the practice of law. Considering all the concurring circumstances, his suspension is decreed for a period of one year.

Mr. Justice Hernández Matos did not participate herein.